**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DONNA NJAASTAD, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| ELECTROLUX AB and ELECTROLUX NORTH AMERICA, INC., | **CLASS ACTION** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Donna Njaastad, individually and on behalf of all others similarly situated (the "Class"), through her undersigned counsel, alleges as follows against Defendants Electrolux AB and Electrolux North America, Inc. (together, "Electrolux").

### INTRODUCTION

1.      Plaintiff and the Class are purchasers of Electrolux ranges, including those sold under the Electrolux, AEG, and Frigidaire brand names (the "Ranges"), that include dangerous latent defects in the design, or in the manufacture, of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the "Defect"). The control knobs on the Ranges are prone to, and do, rotate as a result of minor, inadvertent contact. When the knobs on the Ranges are accidentally and inadvertently contacted, the Ranges actuate without warning and cause the ignition of gas Range burners and heating of electric Range cooktops unbeknownst to the consumer. This unintentional actuation of the Ranges thus creates hazardous conditions—leaking gas or heating electric cooktops to extreme temperatures—and serious risk of fire, property damage, and personal injury.

1

2.     The Ranges span several model numbers, but they all contain the same defect and are all subject to unintentional actuation.  All of the Ranges, gas and electric, contain the same, or substantially similar, front-mounted burner control knobs which are identically or similarly designed and, as a result, are prone to, and do, rotate as a result of minor, inadvertent contact causing them to unintentionally actuate.

3.     The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional actuation.  In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being actuated inadvertently.

4.     Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional actuation.

5.     The propensity of the Ranges to be unintentionally actuated—*i.e.*, turned on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class.  This defective condition renders the Ranges hazardous and unsafe for normal and expected use.  The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

6.     Since at least 2015, Electrolux has known that its Ranges were susceptible to unintentional actuation.  Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC").  Consumers have also filed complaints with Electrolux directly via online product reviews.

7.     Because the existence of the Defect was concealed by Electrolux, Plaintiff and the Class were deceived and deprived of the benefit of their bargain.  A range that turns on without a consumer's knowledge has no value because it cannot be used safely.  Alternatively, the Ranges

have far less value than promised at the point of sale, because a range prone to unintentional actuation, and the attendant risk of harm, is less valuable than one that operates safely.

8.      The below allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

10.     The United States District Court for the Northern District of Illinois has jurisdiction over Defendants because Defendants transact business in Illinois, have purposely availed themselves of the laws of Illinois, and because many of the specific events giving rise to this action occurred in Illinois.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants have marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District.

## PARTIES

12.     Plaintiff Donna Njaastad is a citizen and resident of Palatine, Illinois.

13.     Defendant Electrolux AB is a Swedish multinational corporation located in Stockholm, Sweden. Electrolux AB designs, manufactures, and distributes Ranges for sale in this jurisdiction. Electrolux AB's "North American headquarters" are in Charlotte, North Carolina. Electrolux AB also regularly monitors its wholly owned subsidiaries' financial risk arising from

operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

14.     Electrolux AB is and has at all times relevant been in the business of manufacturing, distributing, marketing, promoting, and selling the Ranges throughout the United States and in this jurisdiction. Electrolux AB purposely directs its conduct toward this District and engages in a continuous course of business in this District by selling numerous ranges and other consumer goods in this District every year.

15.     Defendant Electrolux North America, Inc. is a wholly owned subsidiary of Electrolux AB. Electrolux North America is a Delaware corporation with its headquarters in Charlotte, North Carolina. Electrolux North America warranties products designed, manufactured, and distributed by Electrolux AB. and it acts as Electrolux AB's agent in the processing of warranty claims related to defects in manufacturing or materials used by Electrolux AB during the manufacturing process.

16.     Electrolux North America is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. Electrolux North America engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

17.     Electrolux AB and Electrolux North America (collectively, "Defendants" and/or "Electrolux") are in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized resellers.

4

## ALLEGATIONS SPECIFIC TO PLAINTIFF NJAASTAD

18.    On or about October 27, 2022, Ms. Njaastad purchased a new Frigidaire Range Model Number FGGH3047SS from Abt Appliances—an authorized Electrolux reseller—in Glenview, Illinois for $1,411.62.

19.    Ms. Njaastad reviewed Electrolux marketing materials before she purchased her Range.

20.    Ms. Njaastad was aware that her Range was covered by an Electrolux warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Electrolux warrants against defects in materials and workmanship for one year.  Absent this warranty, Ms. Njaastad would not have purchased her Range.

21.    Ms. Njaastad also purchased an additional five-year warranty for her Range.

22.    Ms. Njaastad purchased the Range for personal, family, or household use.

23.    Ms. Njaastad uses, and at all times has used, her Range in a normal and expected manner.

24.    Ms. Njaastad's Range was installed in her house shortly after she purchased it on around October 27, 2022.

25.    A few days after installation, Ms. Njaastad noticed that her Range was being actuated unintentionally.  The Range's knobs will rotate with light pressure and, in doing so, ignite its gas burners.  The issue remains on-going.

26.    On November 13, 2022, Ms. Njaastad purchased, and now uses, safety devices that are placed on her Range's burner control knobs.  The devices generally prevent inadvertent actuation of the Range but are not foolproof.

27.    Before purchasing her Range, Ms. Njaastad did not and could not have known that her Range suffered from the Defect.  Had Electrolux disclosed the Defect prior to her purchase of

the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Njaastad would not have purchased the Range or would have paid substantially less. As a direct result of Electrolux's conduct, Ms. Njaastad has suffered significant economic injury.

**FACTUAL ALLEGATIONS COMMON TO THE CLASS**

**A.    The Ranges**

28.    The Ranges each have front-mounted knobs that control the cooktop's burners, for example:[1]



29.    The models at-issue include, but are not limited to, FGGH3047SS and all models containing substantially similar controls.

---

[1]    https://www.abt.com/Frigidaire-Gallery-ADA-30-Smudge-Proof-Stainless-Steel-Front-Control-Gas-Range-With-Air-Fry-FGGH3047VF/p/135087.html (Model Number FGGH3047VF).

30.     The National Home Builders Association states that the useful life of a gas range is 15 to 23 years, with 19 years being the average.[2]  The National Home Builders Association also states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[3]

**B.     The Defect**

31.     Consumers reasonably expect that Ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with a Range's burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range.  However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended actuation of Ranges.  Indeed, inadvertent contact with burner controls by pets and children has caused Ranges to actuate and create fires and emit deadly gases.

32.     Unfortunately, and unbeknownst to consumers, because of the Defect, each knob actuates the Ranges through a single smooth motion—a push motion with a twist—requiring minimal force and distance.  Plaintiff alleges that this is a defect in the design, or alternatively, a manufacturing defect wherein the Ranges differ uniformly from the manufacturer's intended result or design.  The Ranges do not conform to industry standards, or to a reasonable consumer's expectation, because the knobs are susceptible to unintentional actuation rendering the Ranges dangerously defective.

33.     The process to actuate a Range should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

---

[2]   https://www.mrappliance.com/expert-tips/appliance-life-guide/.

[3]   *Id.*

34.    The user manual for the Range purchased by Plaintiff describes the process as such:[4]

## SETTING SURFACE CONTROLS

**Setting surface controls**

The ability to heat food quickly and in large volumes increases as the burner size increases. Your gas appliance may be equipped with many different sized surface burners.

It is important to select cookware that is suitable for the amount and type of food being prepared. Select a burner and flame size appropriate for the cookware size.

- The standard size burner or burners may be used for most surface cooking needs.

- Small burners are best used for low-flame heating of small amounts of food.

- Large burners are best for bringing large quantities of liquid to temperature or heating larger quantities of food.

**Setting a surface burner:**

1. Place cooking utensil on center of surface burner grate. Be sure the cooking utensil rests stable on the burner grate.

2. Push the burner's surface control knob in and turn counterclockwise out of the OFF position (Figure 7).

3. Release the surface control knob and rotate to the LITE position ( 🔥 ). Visually check that the burner has a steady gas flame.

4. Once the surface burner has a flame, push the surface control knob in and turn counterclockwise to the desired flame size setting. Adjust the flame as needed using the knob markings.

### ➡ IMPORTANT

- NEVER place or straddle a cooking utensil over two different surface cooking areas at the same time unless the cookware is specifically designed for the purpose.

- DO NOT cook with a surface control knob left in the lite position ( 🔥 ). The electronic ignitor will continue to spark. Turn the control knob out of the lite position and adjust the flame size.

- Do not place aluminum foil, or ANY material that can melt on the range cooktop. If items melt, they may permanently damage the appearance of the cooktop.

### ⚠ CAUTION

**Do not** place flammable items such as plastic wrappings, spoon holders, or plastic salt and pepper shakers on the cooktop when it is in use. These items could melt or ignite. Potholders, towels, or wooden spoons could catch fire if placed too close to the surface burners.



**Figure 7:    Surface control knob**

### 🔥 NOTE

- When setting a surface control knob to the lite position, all of the electronic surface ignitors will spark at the same time. However, only the surface burner you are setting will ignite.

- In the event of an electrical power outage, the surface burners may be lit manually. To light a surface burner, hold a lit match to the burner head, then slowly turn the surface control knob to lite. Once the burner ignites, push in and turn knob out of lite then to the desired flame setting. Use caution when lighting surface burners manually.

**16**

---

[4] https://content.abt.com/documents/126394/UseAndCareGuide-FGGH3047X-1.pdf.

8

35.     However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to actuate their Ranges, the Ranges are often inadvertently actuated by a single continuous motion.

36.     All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional actuation. The design of the Ranges puts no space between the consumer and the hazard. There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

37.     While some of the Ranges may contain an oven handle that could have a guarding effect, it is wholly insufficient to act as an effective guard or barrier. As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

38.     The Defect renders Electrolux Ranges unusable for their intended central purpose: safe cooking. Unintentional actuation allows electric cooktops to reach extreme temperatures and gas Ranges to emit toxic fumes; both electric and gas Ranges present a fire risk.

39.     The Ranges are defective at the point of sale. Consumers could not reasonably know about the Defect at the point of sale and could not discover the Defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

### C.     Electrolux's Knowledge of the Defect

40.     At all relevant times, Electrolux knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective,

unmerchantable, and unfit for their intended use.

41.    Consumers submitted incident reports about the Defect to the U.S. Consumer Product Safety Commission ("CPSC") and complaints directly to Electrolux via reviews posted to its website as early as 2015.  This demonstrates that Electrolux knew about the Defect by at least 2015.

42.    CPSC incident report sent to Electrolux on December 9, 2015:[5]

**Incident Details**

**Incident Description:** The surface control knob did not lock in the off position on our Frigidaire Gas Range. The gas was turned on by a person passing by that touched the knob. This turned on the gas at low amount and filled the room with gas. This happened two times in the past few months. It was discovered and the rooms were ventilated without an explosion. This is a Frigidaire Gas Range Gallery Model # LGGF3043KFM Serial # VFF5043275 bought 2/14/2012.
**Incident Date:** 9/8/2015
**Incident Location:** Home/Apartment/Condominium

43.    CPSC incident report sent to Electrolux on March 10, 2020:[6]

**Incident Details**

**Incident Description:** Our new Frigidaire 30" slide in Gas range Model# FGGH3047VF has a severe safety risk. We have a Frigidaire microwave above the gas range. Frequently when placing food in and taking food out of the microwave, we have body contact with the gas range which sticks out further than the microwave. The gas range burner controls are on the front face of the range. When your body touches the controls, they can turn on the gas without the ignitor coming on resulting in natural gas being discharged to the atmosphere. We've experienced coming into the kitchen full of natural gas. We consider the faulty gas burner control lock out feature to be a severe safety risk and it can cause loss of life.
**Incident Date:** 2/16/2020
**Incident Location:** Home/Apartment/Condominium

44.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website seven months ago:[7]

---

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1520476.

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1955496

[7] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FCRG3052AB/#questions_reviews

10



★☆☆☆☆

**Dangerous**

HELEN BACK

7 months ago

We have had consistent issues with the knobs on this range. If you walk by and brush the knob with your clothing, the gas turns on. Tonight was the absolute worst, and the most dangerous. The gas was streaming into our home for hours, and the smell when my husband arrived home was alarming. We have animals in the home as well. One has vomited. DO NOT BUY ANY RANGE FROM FRIGIDAIRE UNTIL THEY ADDRESS THIS ISSUE.

Helpful? 👍 (1) 👎 (0)    Report

45.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website two months ago:[8]



★★☆☆☆

**Scratches Easily and Difficult to Clean**

JJB2

2 months ago

This range looks beautiful before using. We followed the instructions for cleaning before using. After the first use of the ceramic cook top, it scratched and could not be buffed. After the second and third consecutive uses, it is covered in scratches. We use good quality cookware and have used this type of cookware for years on other ceramic cook tops. Both Frigidaire and Spencer's (where we purchased) said that it was only cosmetic and they could not do anything about the range (nor would they exchange it for a new one, despite it was less than a week old). The entire stove is hard to keep clean and needs to be scrubbed after every use and still looks terrible. The oven is also very hot and food needs to be monitored or the temperature needs to be decreased. The burners work well and heats food quickly but it is easy to turn on the knobs easily when cleaning the stove so beware. We have purchased other Frigidaire ranges in the past and have never been disappointed before. I would NOT RECOMMEND this model to anyone.

> Originally posted on 30" Front Control Freestanding Electric Range

Helpful? 👍 (0) 👎 (0)    Report

💬 Response from Frigidaire:                                          2 months ago

**Online Outreach Specialist**

Hello, JJB2. We pride ourselves on our high quality standards and regret that our product has not lived up to your expectations. Reviews like yours let us know what is important to our consumers and what may be implemented in future designs; we appreciate you taking the time to share. A tip that can help alleviate most knob concerns is using protective knob covers. They can prevent your knobs from easily being turned on when bumped, and they are childproof. Should you have any other concerns that we may be able to help with, please don't hesitate to reconnect with us. -Rox

46.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three months ago:[9]

---

[8] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Electric-Range/FFEH3054UB/#questions_reviews

[9] *Id.*



47.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website four months ago:[10]



---

[10] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Electric-Range/FGEH3047VF/#questions_reviews

48. Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website seven months ago:[11]



49. Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website eleven months ago:[12]



50. Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website four months ago:[13]

---

[11] *Id.*

[12] *Id.*

[13] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FFGF3054TB/#questions_reviews



51.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website four years ago:[14]



52.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website six years ago:[15]

---

[14] *Id.*

[15] *Id.*



53.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website ten months ago:[16]



54.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website eleven months ago:[17]



55.     Consumer complaint about the Defect submitted directly to Electrolux via review

---

[16] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/PCFG3078AF/#questions_reviews

[17] *Id.*

15

posted to its website eleven months ago:[18]



56.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three years ago:[19]



57.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[20]



---

[18] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Electric-Range/FFEH3054UB/#questions_reviews

[19] *Id.*

[20] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Electric-Range/PCFE3078AF/#questions_reviews

58.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[21]



59.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three years ago:[22]



60.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[23]

---

[21] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Electric-Range/FGEH3047VF/#questions_reviews

[22] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FCRG3052AB/#questions_reviews

[23] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/GCRG3060AF/#questions_reviews



61.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website two years ago:[24]



62.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[25]



63.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[26]

---

[24] *Id.*

[25] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FGGH3047VF/#questions_reviews

[26] *Id.*



64.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website a year ago:[27]



65.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three years ago:[28]



---

[27] *Id.*

[28] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FGGH3047VF/#questions_reviews

19

66.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three years ago:[29]



67.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website four years ago:[30]



68.     Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website two years ago:[31]

---

[29] *Id.*

[30] *Id.*

[31] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/GCRG3060AF/#questions_reviews



⭐☆☆☆☆

**bad knobs no help**

Didough

2 years ago

The first time I used this stove I contacted the co. and complained. You just bump the knobs and they ignite or just gas comes out. This is a fire hazard! They have done nothing about this problem. They need to recall this stove before something bad happens.

Helpful? 👍 (0)   👎 (0)      Report

69.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website three years ago:[32]



⭐☆☆☆☆

**Disappointed**

Jabs6459

3 years ago

I purchased this stove 1 week ago. The noise coming from the vent while baking and when the stove is cooling down is very loud. It rattles the whole stove when your cooking. Also the has been 3 occasions when just by bumping the knobs the gas goes on. The knobs are very sensitive. I should not have to buy safety knobs for a stove!!! So instead I've taking the knob off so I can sleep at night. The one positive is the oven heats up quickly.

Originally posted on 30" Front Control Freestanding Gas Range

Helpful? 👍 (1)   👎 (0)      Report

💬 Response from Frigidaire:                                                                    3 years ago

**Online Outreach Specialist**

Hello, Jabs6459! Thank you for your review. Your feedback is important to us. Our design and engineer teams are constantly monitoring our brand pages for feedback such as yours for future reference. I would like to point out that your range appears to be operating normally. The ignition control knob must be depressed and turned to the ignition selection simultaneously to ignite the corresponding burner. If the ignition control knob is not turned all the way to the appropriate selection for ignition when depressed, the described concern may occur. You may find that child safety locks for the ignition control knob provide a more comfortable cooking experience. Should you need further assistance, please feel free to chat with us online or contact us via phone at 800-374-4432 M-F, 8:30 am- 8:00 pm. -Briana

70.    Consumer complaint about the Defect submitted directly to Electrolux via review posted to its website five years ago:[33]

---

[32] https://www.frigidaire.com/Kitchen-Appliances/Ranges/Gas-Range/FFGH3054UB/

[33] https://www.frigidaire.com/Owner-Center/Product-Support/FGGF3059TF#reviews



71. In addition, upon information and belief, certified Electrolux appliance technicians have observed unintentional actuation in Ranges in the field.

**D. Electrolux's Deficient Warranty Service**

72. Electrolux provided a uniform, express one-year factory warranty against defects in materials and workmanship. Such a warranty was included in the user manual for the model Range purchased by Plaintiff.

73. As explained above, Electrolux routinely denies warranty claims arising from the Defect.

74. In addition to the express warranty, Electrolux marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended purpose. Electrolux also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be actuated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

75.     Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

76.     Electrolux has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, Electrolux has failed to provide effective repairs.

**E.      Injuries and Risk of Imminent Harm to Plaintiff and the Class**

77.     Plaintiff and the other Class purchased their Ranges solely for their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by Electrolux.

78.     In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had Electrolux adequately disclosed the Defect.

79.     Electrolux has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

80.     As a direct and proximate result of Electrolux's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

81.     As a direct and proximate result of Electrolux's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased Electrolux's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not

23

have purchased the Ranges, would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional actuation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule

82.     The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and Electrolux concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Electrolux's concealment of the Defect.

### B.     Fraudulent Concealment

83.     Any applicable statutes of limitation have been tolled by Electrolux's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

84.     Electrolux was and is under a continuous duty to disclose to Plaintiff and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

85.     At all relevant times, and continuing to this day, Electrolux knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

86.     Given Electrolux's failure to disclose this non-public information, over which Electrolux had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on Electrolux's assurances of safety. Had Plaintiff and class members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

87.     Plaintiff and the Class have been kept ignorant by Electrolux of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

**C.     Estoppel**

88.     Electrolux was and is under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Ranges.  Electrolux knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing.  Electrolux knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiff reasonably relied on Electrolux's assurances of safety. For these reasons, Electrolux is estopped from relying on any statute of limitations in defense of this action.

89.     Additionally, Electrolux is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action on her own behalf and on behalf of the following Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Class

All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale, except for those who purchased their Range in Michigan, North Carolina, or Ohio.

### Illinois Sub-Class

All residents of Illinois who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

91.     The Class and the Subclass are referred to collectively as the "Class" for convenience.  Excluded from the Class and Subclass are Electrolux, its affiliates, employees,

officers, and directors; and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

92. ***Numerosity***. Upon information and belief, the class is so numerous that joinder of all members is impracticable. In 2020, Electrolux had around 12% volume market share in core appliances in North America. The Classes and Subclasses therefore must contain, at the very least, hundreds if not thousands of members each.

93. ***Commonality***. The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the Ranges contain a manufacturing defect, whether the design and/or manufacturing defect poses a safety risk, Electrolux's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to Electrolux. The common questions of law and fact include, but are not limited to, the following:

a. Whether the Ranges pose unreasonable safety risks to consumers;

b. Whether Electrolux knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c. Whether Electrolux concealed the safety risks its Ranges pose to consumers;

d. Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase an electric range;

e. Whether the Ranges possess material Defects;

f. Whether Electrolux knew or should have known of the inherent Defects in the Ranges when it placed them into the stream of commerce;

g. Whether Electrolux concealed the Defects from consumers;

h. Whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i. Whether the Ranges are merchantable;

j. Whether the Ranges are fit for their intended use;

k. Whether Electrolux was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

l. whether any false warranties, misrepresentations, and material omissions by Electrolux concerning its defective Ranges caused Class Members' injuries; and

m. whether Electrolux should be enjoined from further sales of the Ranges.

94. *Typicality*. Plaintiff has the same interest as all members of the classes she seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all class members own or owned a Range designed or manufactured by Electrolux with uniform Defects. All the claims of Plaintiff and Class Members arise out of Electrolux's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Electrolux's failure to disclose the known safety risks and Defects. Also typical of Plaintiff's and Class members' claims is Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, Electrolux's conduct in concealing the Defects in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

95. *Adequacy*. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

96. *Predominance and Superiority*. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as

joinder of all members is impracticable. Electrolux has acted in a uniform manner with respect to the Plaintiff and Class Members.

97.     Electrolux is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Electrolux's wrongful conduct as alleged herein.

98.     The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

99.     Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Electrolux's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and Electrolux's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

100.     There will be no undue difficulty in the management of this litigation as a class action.

101.     Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

102.     *Ascertainability*.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in Electrolux's and other databases.

103.     *Injunctive and Declaratory Relief*.  Electrolux has acted and refused to act on

28

grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Electrolux made uniform representations and warranties to the Class as a whole, Electrolux concealed facts from and made material misrepresentations to the Class as a whole, and Electrolux has destroyed and may still be destroying evidence relevant to the allegations of the Class.

**CLAIMS FOR RELIEF**

**Count I**
***Magnuson-Moss Warranty Act***
**(15 U.S.C. § 2301)**
**(On behalf of the Nationwide Class)**

104.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

105.     Plaintiff brings this claim individually and on behalf of the Nationwide Class.

106.     Plaintiff and the class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

107.     Electrolux is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

108.     The Ranges are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

109.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

110.     Electrolux's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

111.     Electrolux's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

112.    Defendants breached the implied warranty and the express warranty by virtue of the above-described acts.

113.    Plaintiff and the other Class Members notified Electrolux of the breach within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Electrolux's headquarters on April 10, 2023. Electrolux was also on notice of the Defect from, among other sources, the complaints and service requests it received from Class Members and its retailers.

114.    Electrolux's breach of the implied warranty and express warranty deprived Plaintiff and Class Members of the benefits of their bargains.

115.    Plaintiff and the Class Members have had sufficient direct dealings with either Electrolux or its agents (retailers and technical support) to establish privity of contract between Electrolux, on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Electrolux and its retailers, and specifically, of Electrolux's implied warranties. The retailers were not intended to be the ultimate consumers of the Ranges and have no rights under the warranty agreements provided with the Ranges; the warranty agreements were designed for and intended to benefit the consumer only.

116.    Electrolux breached these warranties, as described in more detail above and below. Without limitation, the Ranges contain a Defect that puts Class Members' safety in jeopardy. The Ranges share a common defect in that they are defectively designed and/or are manufactured with defective materials and/or with poor workmanship. Contrary to Electrolux's representations, the Ranges are defective in manufacture, materials and/or workmanship and are unsafe. The Ranges share a common defect that causes unintentional actuation. The resulting failures and manifestations of the defect are occurring within the warranty terms and period.

117. Affording Electrolux a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Electrolux has long been on notice of the claims of Plaintiff and Class members and has refused to provide a remedy, instead placing the blame on customers or refusing to acknowledge the existence of the defect.

118. At the time of sale of each of the Ranges, Electrolux knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Ranges' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Electrolux a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

119. Plaintiff and Class Members would suffer economic hardship if they returned their Ranges but did not receive the return of all payments made by them. Because Electrolux is refusing to acknowledge any revocation of acceptance and refusing to return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Ranges by retaining them.

120. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

121. Plaintiff, individually and on behalf of all Class Members, seeks all damages permitted by law, in an amount to be proven at trial.

**Count II**
***Fraud by Omission***
**(On Behalf of the Nationwide Class, or Alternatively, the Illinois Subclass)**

122. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

123. Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the Illinois Subclass.

124. Electrolux made material omissions concerning a presently existing or past fact in violation of substantially identical common law. Electrolux did not fully and truthfully disclose to its customers the true nature of the Defect. A reasonable consumer would not have expected the Defect in a new range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

125. Electrolux made these omissions with knowledge of their falsity and with the intent that Plaintiff and Class Members rely upon them.

126. The facts concealed, suppressed, and not disclosed by Electrolux to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges or pay a lesser price.

127. Electrolux had a duty to disclose the true quality and reliability of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to Electrolux, Electrolux had superior knowledge and access to the relevant facts, and Electrolux knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. Electrolux also had a duty to disclose because it made many partial representations about the qualities and reliability of its ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their ranges.

128. Had Plaintiff and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

129. Plaintiff and Class Members reasonably relied to their detriment upon Electrolux's material omissions and suffered damages as a result. Electrolux's conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, based upon all the facts as alleged herein,

Plaintiff and Class Members are entitled to an award of punitive damages.

**Count III**
***Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act***
**815 Ill. Comp. Stat. Ann. § 505/1, *et seq.***
**(On Behalf of the Illinois Subclass)**

130.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

131.    Plaintiff brings this action individually and on behalf of the members of the Illinois Subclass.

132.    Plaintiff brings this claim under the laws of Illinois, individually and on behalf of the Illinois Subclass.

133.    The Illinois Consumer Fraud and Deceptive Business Practices Act was created to protect Illinois consumers from deceptive and unfair business practices.

134.    Electrolux's conduct described herein constitutes use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of merchandise, the Ranges, in trade or commerce in Illinois, with the intention that Plaintiff and Illinois Subclass members would rely on such conduct in deciding to purchase the Ranges, making it unlawful under 815 Ill. Comp. Stat. Ann. §505/1, *et seq.*

135.    Plaintiff and the Illinois Subclass members relied on the material representations made by Electrolux and purchased the Ranges for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by 815 Ill. Comp. Stat. Ann. §505/1, et seq. Plaintiff and the Illinois Subclass members acted as reasonable consumers would have acted under the circumstances, and Electrolux's unlawful

33

conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages.

136. Accordingly, pursuant to 815 Ill. Comp. Stat. Ann. §505/1, *et seq.*, Plaintiff and Illinois Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

137. In addition, given the nature of Electrolux's conduct, Plaintiff and the Illinois Subclass members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Electrolux's unlawful conduct.

**Count IV**
***Breach of Express Warranty***
**(On Behalf of the Illinois Subclass)**

138. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

139. Plaintiff brings this Count individually and on behalf of the Illinois Subclass against Electrolux.

140. In connection with the purchase of each Range, Electrolux provides an express warranty ("Warranty"), pursuant to which for a period of one year Electrolux will pay all costs to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product.

141. In addition to the written warranties Electrolux issued, Electrolux expressly warranted several attributes, characteristics, and qualities, as set forth above.

34

142. Furthermore, the Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Illinois Subclass members whole and because Electrolux has failed and/or refused to adequately provide the promised remedies.

143. Accordingly, recovery by Plaintiff and the Illinois Subclass members is not limited to the warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Illinois Subclass members seek all remedies as allowed by law.

144. Also, as alleged in more detail herein, at the time that Electrolux warranted and sold the Ranges, it knew that the Ranges did not conform to the warranties and were inherently defective, and Electrolux wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Ranges. Plaintiff and the Illinois Subclass members were therefore induced to purchase the Ranges under false and/or fraudulent pretenses.

145. Moreover, many of the damages flowing from the Ranges cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Electrolux's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Illinois Subclass members' remedies would be insufficient.

146. Electrolux has been provided notice of these issues by numerous complaints as described herein.

147. As a direct and proximate result of Electrolux's breach of express warranties, Plaintiff and the other Illinois Subclass members have been damaged in an amount to be determined at trial.

**Count V**
***Breach of the Implied Warranty of Merchantability***
**(On behalf of the Illinois Subclass)**

148. Plaintiff incorporates by reference each preceding and succeeding paragraph as

though fully set forth herein.

149.    Plaintiff brings this Count individually and on behalf of the Illinois Subclass against Defendant.

150.    Electrolux impliedly warranted that the subject Ranges, which Electrolux designed, manufactured, sold or leased, were merchantable, fit for the ordinary purposes for which they were intended to be used, and were not otherwise injurious to consumers. Electrolux breached its implied warranty of merchantability when it designed, manufactured, distributed, sold and leased the Ranges in an unsafe and un-merchantable condition.

151.    These Ranges, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which ranges are used.

152.    Specifically, the Ranges are inherently defective in that they include dangerous latent defects in the design, or in the manufacture, of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation.  This unintentional actuation of the Ranges in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

153.    Plaintiff and each of the members of the class have had sufficient direct dealings with either Electrolux or its agent retailers to establish privity of contract between Electrolux, on the one hand, and Plaintiff and each of the members of the class, on the other hand. Notwithstanding, privity is not required because plaintiff and each of the members of the class are the intended beneficiaries of Electrolux's written warranties and its contractual relationships with Electrolux retailers. The retailers were not intended to be the ultimate consumers of the subject Ranges, and have no rights under the warranty agreements provided by Electrolux. Electrolux's express warranties were designed for and intended to benefit consumers only. Plaintiff and the members of the Illinois Subclass class were the intended consumers of the subject Ranges.

154.    Defendants were provided notice of these issues by complaints submitted by

36

consumers to the Electrolux website and to other consumer websites, and complaints filed against it including the instant Complaint, and by communications sent by consumers.

155.    As a direct and proximate result of Electrolux's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Subclass members have been damaged in an amount to be proven at trial and are also entitled to recover compensatory damages, including but not limited to the cost of repairs and diminution in value.

**Count VI**
***Unjust Enrichment***
**(On Behalf of the Nationwide Class, or in the alternative,
on behalf of the Illinois Subclass)**

156.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

157.    Plaintiff brings this claim on behalf of the Nationwide Class or, in the alternative, on behalf of the Illinois Subclass.

158.    Electrolux received proceeds from its intentional sale of defective Ranges with defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

159.    In exchange for the purchase price paid by Plaintiff and Class Members, Electrolux provided defective Ranges that are likely to pose a material risk of fire, property damage, and personal injury within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

160.    Plaintiff and Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

161.    Electrolux received and is aware of the benefit conferred by Plaintiff and Class

Members and has retained that benefit despite its knowledge that the benefit is unjust.

162.    Under the circumstances, permitting Electrolux to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, Electrolux should be required to disgorge the unjust enrichment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donna Njaastad, individually and on behalf of the above defined Class, by and through counsel, prays the Court grant the following relief:

A.    An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Plaintiff Donna Njaastad as representative for the Class and appointing her counsel as lead counsel for the Class;

C.    An order awarding Plaintiff Donna Njaastad and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Electrolux;

D.    A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.    An Order enjoining Electrolux, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring Electrolux to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring Electrolux to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.    Nominal damages as authorized by law;

G.    Restitution as authorized by law;

H.    Punitive damages as authorized by law;

I.    Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.    An order awarding attorney's fees pursuant to applicable Federal and State law;

K.    Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.      Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.


Dated: May 24, 2023                              Respectfully submitted,

                                                 /s/ *Zachary Arbitman*
                                                 Alan M. Feldman
                                                 Edward S. Goldis
                                                 Zachary Arbitman
                                                 FELDMAN SHEPHERD WOHLGELERNTER
                                                 TANNER WEINSTOCK & DODIG, LLP
                                                 1845 Walnut Street, 21st Floor
                                                 Philadelphia, PA 19103
                                                 T: (215) 567-8300
                                                 F: (215) 567-8333
                                                 afeldman@feldmanshepherd.com
                                                 egoldis@feldmanshepherd.com
                                                 zarbitman@feldmanshepherd.com

                                                 Michael F. Ram
                                                 Marie N. Appel
                                                 MORGAN & MORGAN
                                                 711 Van Ness Ave, Suite 500
                                                 San Francisco, CA 94102
                                                 mram@forthepeople.com
                                                 mappel@forthepeople.com

                                                 Michael E. Moskovitz
                                                 Nia Barberousse Binns (Application for
                                                 Admission Pending)
                                                 Robert J. Wozniak
                                                 FREED KANNER LONDON & MILLEN LLC
                                                 2201 Waukegan Road, Suite 130
                                                 Bannockburn, IL 60015
                                                 T: (224) 632-4500
                                                 mmoskovitz@fklmlaw.com
                                                 nbinns@fklmlaw.com
                                                 rwozniak@fklmlaw.com